UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD WHITE,

                Petitioner,                            Case Number 2:10-CV-11541
                                                                             Honorable Patrick J. Duggan

v.

HUGH WOLFENBARGER,

                Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

      This matter is before the Court on Petitioner Ronald White's application for a writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner is challenging his January 7, 2008 convictions in the Circuit Court for Wayne County, Michigan of one count of first-degree criminal sexual conduct in violation of Michigan Compiled Laws § 750.520b(1)(a), and two counts of second-degree criminal sexual conduct in violation of Michigan Compiled Laws § 750.520c(1)(a). The trial court sentenced Petitioner to concurrent terms of 25-to-40 years for the first-degree conviction and 86 months-to-15 years for the second-degree convictions. The Court finds that Petitioner is not entitled to habeas relief based on the seven claims asserted in his petition. Therefore, his petition is denied. The Court also denies Petitioner a certificate of appealability.

### I.  Facts and Procedural History

      This Court recites verbatim the relevant facts relied upon by the Michigan Court of

Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C.

§ 2254(e)(1).  *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009).  As the court of

appeals stated:

> The victim is the cognitively impaired[FN1] granddaughter of defendant's former girlfriend. [fn1 Testimony indicated that the victim was generally perceived, during the relevant time period, to have the cognitive function of a child approximately half her chronological age.] The victim testified that defendant engaged in digital-vaginal and lingual-vaginal penetration with her on more than one, but less than five, occasions between October 2006 and June 2007, when the victim was 11 and 12 years old. These incidents occurred when the victim spent the night at defendant's home. When she stayed with defendant, she slept in his bed; he sometimes slept in the bed with her; at other times, he slept on the couch. The victim also testified that defendant kissed her "with his tongue" and fondled her breasts and buttocks on more than one occasion during this period of time. The victim remembered one specific date on which defendant engaged in digital penetration, February 9, 2007, because it was the day of her Valentine's Dance at school. Otherwise, she was unable to identify the specific dates on which the criminal sexual conduct occurred. Defendant bought the victim numerous gifts, including a ring, and he told the victim that they were married. Defendant bought the victim a bikini, which was too small for her and exposed portions of her buttocks and breasts, and he took a picture of her standing next to his car while wearing the bikini. The victim's grandmother testified that the victim often stayed over night with defendant, that she had done so on February 9, 2007, and that defendant bought the victim numerous gifts, including a ring and a bikini that was too small for her.

> During his statement to police, defendant denied ever intentionally touching the victim for purposes of sexual gratification. Defendant acknowledged he slept with the victim on occasion when she stayed at his house; when they were in bed defendant would put his arm around the victim and she would place her head on his chest. Defendant admitted that the victim would kiss him on the lips, explaining that he felt that she was "practicing" on him. Defendant acknowledged that he gave the victim friendly smacks on the buttocks on occasion, and he admitted that there may have been accidental contact with the victim's buttocks or breasts. Defendant also explained that, when he sat on the couch with the victim, he

2

would rub her abdomen, and she would sometimes move his hand to her breasts, but he stated that he would move his hands away and tell her that it was wrong. Defendant further stated that "about the only time [he] could think of that [any penetration] could have happened" would have been unintentional, when he and the victim were wrestling or "horsing around." He agreed with the questioning officer that it was possible that his hand made contact with, and his finger slipped inside, the victim's genital area while wrestling, and likewise, indicated that it was possible that there was unintentional inappropriate contact, or that the victim perceived there to be such contact, when the victim sat on his head while wrestling with defendant. Defendant repeatedly denied ever initiating any sexual contact with the victim, and explained that he had no sexual drive, and did not get sexually aroused "any more."

*People v. White*, No. 283750, 2009 WL 1567360, at *1 (Mich. Ct. App. June 4, 2009).

Following his conviction, Petitioner filed an appeal of right. His appellate brief, along with his supplemental *pro so* brief, raised the same issues that he raises in the instant petition. The Michigan Court of Appeals affirmed in an unpublished opinion. *Id.* Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims, but the Court denied the application by standard order. *People v. White*, 485 Mich. 1009, 775 N.W.2d 782 (2009) (table).

Petitioner then filed his current application for habeas relief, raising the following claims:

I. The trial court violated Mr. White's constitutional right to present a defense by excluding evidence of prior sexual abuse of the complainant that was relevant to explain physical evidence presented by the prosecution.

II. Mr. White is entitled to a new trial because his constitutional and statutory right to presence was violated.

III. Prosecutorial misconduct in closing argument violated White's due process right to a fair trial.

3

IV. Mr. White is entitled to a new trial because he was denied his Sixth Amendment right to the effective assistance of counsel.

V. Mich. Comp. Laws 750.52b is unconstitutional in mandating a 25-year minimum sentence for criminal sexual conduct in the first-degree.

VI. The retroactive application of Mich. Comp. Laws 750.52b violates the petitioner's right to post facto application of law.

VII. The petitioner was denied effective assistance of counsel when his trial attorney failed to present evidence at trial that the petitioner was not present at the date and time alleged by the complainant and that would have impeached the witness and called into question her credibility.

## II.  Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06,

120 S. Ct. 1495, 1519-20 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409, 120 S. Ct. at 1521. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11, 120 S. Ct. at 1522.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. – , –, 130 S.Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7, 117 S. Ct. 2059, 2067 n.7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 360 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. –, –, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 2149 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (citing *Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S. Ct. 1166 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have

5

supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id.*  "[I]f this standard is difficult to meet, that is because it was meant to be."  *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents.  *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781 (1979) (Stevens, J., concurring in judgment)).  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.* at 786-787.

## III.  Analysis

### A.  Evidence Excluded under Rape Shield Statute

Petitioner first contends that his right to present a defense was violated when he was prohibited from presenting evidence that the victim was sexually abused by someone else when she was two years old.  The Michigan Court of Appeals found that the

evidence was properly excluded under Michigan's Rape Shield Law, Mich. Comp. Laws 750.520j, because Petitioner did not articulate how the evidence would be relevant to a proper purpose under the statute when the trial court gave him an opportunity to do so.

Although the Constitution does not explicitly provide a criminal defendant with the right to "present a defense," the Sixth Amendment provides a defendant with the right to process to obtain witnesses in his favor and to confront the witnesses against him, and the Fourteenth Amendment guarantees a defendant due process of law.  Implicit in these provisions is the right to present a meaningful defense.  As the Supreme Court has recognized, "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense." *Washington v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 1923 (1967).  "The right to compel a witness' presence in the courtroom could not protect the integrity of the adversary process if it did not embrace the right to have the witness' testimony heard by the trier of fact.  The right to offer testimony is thus grounded in the Sixth Amendment . . .." *Taylor v. Illinois*, 484 U.S. 400, 409, 108 S. Ct. 646, 653 (1988).  Further, the Court has noted that "[t]his right is a fundamental element of due process of law," *Washington*, 388 U.S. at 19, 98 S. Ct. at 1923, and that "[f]ew rights are more fundamental[.]" *Taylor*, 484 U.S. at 408, 108 S. Ct. at 652.  Although the right to present a defense is fundamental, it is not absolute.  *Bazer v. Parker*, 371 F.3d 310, 323 (6th Cir. 2004).  The right must yield to other constitutional rights.  *See, e.g., United States v. Trejo-Zambrano*, 582 F.2d 460, 464 (9th Cir. 1978) ("The Sixth Amendment right of an accused to compulsory process to secure attendance

7

of a witness does not include the right to compel the witness to waive his Fifth Amendment privilege." The right may also be legitimately circumscribed by other legitimate demands of the criminal justice system. *See United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 1264 (1998).

Further, to constitute a denial of the right to present a defense, a trial court's exclusion of evidence must "infringe[] upon a weighty interest of the accused." *Id.* at 308, 118 S. Ct. at 1264. A "weighty interest of the accused" is infringed where "the exclusion of evidence seriously undermined 'fundamental elements of the defendant's defense' against the crime charged." *Miskel v. Karnes*, 397 F.3d 446, 455 (6th Cir. 2005) (quoting *Scheffer*, 523 U.S. at 315, 118 S. Ct. at 1267). Thus, "whether the exclusion of witnesses' testimony violated [the] defendant's right to present a defense depends upon whether the omitted evidence evaluated in the context of the entire record creates a reasonable doubt that did not otherwise exist." *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (internal quotations marks and citation omitted).

"Like most States, Michigan has a 'rape-shield' statute designed to protect victims of rape from being exposed at trial to harassing or irrelevant questions concerning their past sexual behavior." *Michigan v. Lucas*, 500 U.S. 145, 146, 111 S. Ct. 1732, 1745 (1991). Michigan's statute provides:

> Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g [the sexual conduct offense provisions] unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at

8

issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

(a) Evidence of the victim's past sexual conduct with the actor;

(b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

Mich. Comp. Laws § 750.520j(1).

The Supreme Court has recognized that the state interests addressed by the rape shield law are substantial, including the prevention of surprise and harassment. *Lucas*, at 149-50, 111 S. Ct. at 1746.  Exclusion of relevant evidence may be justified where the state's interests in exclusion outweigh the defendant's interests in having the evidence admitted.  *Id.* at 153, 111 S. Ct. at 1748.

In the present case, the issue regarding the alleged prior sexual molestation of the victim was first broached by the prosecutor prior to jury selection.  The prosecutor indicated that she received information that the victim's grandmother stated during a taped interview that the victim had been molested when she was two years old.  The prosecutor asserted that evidence of this prior alleged incident should be precluded unless Petitioner offered it to demonstrate a prior false allegation or prior physical injury.  The trial court stated: "At this time, unless there is a request of the Court to have it brought into evidence and a hearing, it's disallowed at this time.  But I'm open to it, if there is reason that it should come in."  (1/2/08 Trial Tr. at 104.)  In response, Petitioner's trial counsel did not state that he intended to proffer evidence of the alleged prior molestation. (*Id.* at 108-110.)

However, during his cross-examination of the victim's grandmother, trial counsel attempted to introduce this information into evidence.  The following exchange took place:

> Q [Defense Counsel]: Witness, do you know if Laura Dunaway was sexually active at any point in life before 2005?
>
> Ms. Hagaman-Clark [prosecutor]: Objection, relevance.
>
> Mr. Barnett: I think it's relevant.
>
> The Court: Sustained.
>
> Ms. Hagaman-Clark: I want that stricken.
>
> Mr. Barnett: I'm arguing relevance.  She is saying it's not relevant.  I'm suggesting it is.  There are laws and rules of evidence that apply.
>
> The court: Counsel.
>
> Mr. Barnett: Now, this is not right, judge.
>
> Ms. Hagaman-Clark: You are right about that.
>
> The court: Step up.
>
> (discussion at sidebar)
>
> The Court: Members of the jury, could you please enter the jury room.
>
> The court officer: All rise for the jury.
>
> Ms. Hagaman-Clark: Do you want the witness to be excused?
>
> The Court: Not at this point.
>
> The court officer: Be seated.
>
> The Court: Counsel, hopefully you are aware you are not intending a

mistrial in this case.  However, clearly you are aware of the rape shield statute, and if there were any previous sexual activity of a complainant in a sexual assault case, it is only allowable into evidence if there is a reason for it.  And the reason would have to be brought out at a hearing outside the presence of the jury.  For instance, indication that you have it's not for discovery purposes, or just to bring out something to a jury that is inappropriate; the rape shield statute disallows that.  If you have evidence that there was previous sexual activity that resulted in an injury that you wish to bring to the court's attention that should have been done prior to asking the witness the question, and outside the hearing of the jury.  Would you like to do that now?

Mr. Barnett: No. What I would like to do is let you understand you are instructing me on the rape shield statute, Judge Fresard.  That's what you are doing.  Let me see if I get it straight.  You are telling me that you know more about the Rape Shield Statute than I do?

The Court: It is my job to follow the rules of evidence.

Mr. Barnett: You know something I don't?

The Court: You asked the question.

Mr. Barnett: I'm being rude.

The court: You are being rude.

Mr. Barnett: I don't appreciate you not giving me an opportunity to respond to objections.  I don't care what you think. I think I got a right.

The Court: Counsel, you're doing it in front of a jury.

Mr. Barnett: I won't do it again.  This is not fair.  You are not being fair.  You are attempting to embarrass me here.  I got a right to make my record on this record.

The Court: I excused the jury so you wouldn't be embarrassed.  Although you are on the verge of causing a mistrial in the case by asking the witness clearly inadmissible evidence.

Mr. Barnett: Very well.  Very well.

11

The Court: Would you like to bring out anything at this point?  Do you have any reason for asking that question?

Mr. Barnett: Yes.  Because I know that she was sexually abused when she was two years old and so do you.  That's why – that's why, before the trial we started out –  this lady said that she was sexually abused when she was two.  You heard it before the trial.  That's why I'm asking.

The Court: Counsel, I asked you specifically to bring to the court's attention any intention to bring that out and the purpose for why you would bring it out.

Mr. Barnett: I haven't asked the question yet.

The court: You have asked the question.

Mr. Barnett: I asked her did she go to the doctor.  I have not asked her about the results.  See, the rape shield statute does not preclude the question.

The Court: You did not ask her only did she go to the doctor for it, you asked her more than that.

Mr. Barnett: Let's have it read.

The Court: What was the last question he asked this witness?

Mr. Barnett: I ask to have it read back.  I think when I'm right, I appreciate you apologizing to me.

The Court: Please read it back.

(Requested portion of record read)

Mr. Barnett: I got nothing to say.  The record speaks for itself.

The Court: That is much more than did you bring her to a doctor.

Mr. Barnett: How is that precluded by the rape shield?

The Court: She was sexually active term is precluded.

12

Mr. Barnett: How am I not familiar with the rape shield?  It's not going to –
tell me why?  You just going to be the judge and say rape shield, statement
precluded, that's it?

The Court: It's not my job to instruct you.  It's my job to follow the rules of
evidence.

Mr. Barnett: I have nothing else to say further.

The Court: You have no reason for bringing that out, then.  Anything else
you would like to say?  Bring the jury back in.

(1/3/08 Trial Tr. at 170-174.)

As the record shows, when the trial court asked defense counsel how evidence of a

prior molestation would have been relevant for a proper purpose under the statute,

defense counsel responded combatively and never offered the court a theory under which

the proffered evidence would be admissible.  The closest defense counsel came to

responding to the objection was to reiterate that he knew, and the court knew, that the

victim was abused when she was two years old.  But he never followed up to explain

which exception to the rape shield law applied.

Michigan law required Petitioner to do more than simply assert that a prior sexual

conduct occurred to gain admission of the proffered testimony.  Under the procedure

created in *People v. Hackett*, 421 Mich. 338, 350-51, 365 N.W.2d 120, 125-26 (1984), a

defendant is required to make an offer of proof regarding the proposed evidence and

demonstrate its relevance to the purpose for which he seeks its admission.  Just like the

notice provision of Michigan's rape shield law at issue in *Lucas*, the procedure created in

*Hackett* serves a legitimate state interest in protecting the alleged victim against surprise,

13

harassment, and unnecessary invasions of privacy, by requiring a defendant to demonstrate the admissibility of this type of evidence before it is presented in open court before a jury.  Given the fact that Petitioner made no effort to comply with the requirement, the trial court properly sustained the prosecutor's objection, and Petitioner's due process right to present a defense was not implicated.  The claim was reasonably decided by the state courts.

### B.  Petitioner's Absence and Prosecutorial Misconduct

In his second claim, Petitioner asserts that he was not present when the jury was read a supplemental instruction after it sent a note asking whether it had to reach a verdict on each count and whether it could have testimony reread.  In his third claim, Petitioner asserts that the prosecutor committed misconduct during closing argument when she stated that no evidence was presented to show that a prosecution witness was lying.  Respondent asserts that these claims are barred from review because they were not preserved in the trial court.

The Michigan Court of Appeals found that its review of Petitioner's second claim was barred in light of defense counsel's waiver of Petitioner's right to be present for the re-instruction.  The court likewise found that review of Petitioner's third claim was barred by Petitioner's failure to object to the prosecutor's argument.  When the state courts clearly and expressly rely on a valid state procedural bar, as here, federal habeas review also is barred unless the petitioner can demonstrate "cause" for the default and "actual prejudice" as a result of the alleged constitutional violation, or that failure to consider the

14

claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501

U.S. 722, 750-51, 111 S. Ct. 2565 (1991). If a petitioner fails to show cause for his

procedural default, it is unnecessary for the habeas court to reach the prejudice issue.

*Smith v. Murray*, 477 U.S. 527, 533, 106 S. Ct. 2661, 2666 (1986). In an extraordinary

case, however, where a constitutional error has probably resulted in the conviction of one

who is actually innocent, a federal court may consider the constitutional claims presented

even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477

U.S. 478, 496, 106 S. Ct. 2639, 2649 (1986). Yet to be credible, such a claim of

innocence requires a petitioner to support the allegations of constitutional error with new

reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324, 115

S. Ct. 851, 865 (1995).

The Michigan Court of Appeals clearly indicated that it found review of these

claims barred. The fact that it nevertheless reviewed them for plain error does not

constitute a waiver of the state procedural default bar. *Seymour v. Walker*, 224 F. 3d 542,

557 (6th Cir. 2000). Instead, limiting its review of Petitioner's claims to plain error

shows that the state appellate court enforced its procedural rule. *Hinkle v. Randle*, 271 F.

3d 239, 244 (6th Cir. 2001). Accordingly, Petitioner's second and third claims are

defaulted.

Petitioner contends that any procedural default should be excused because his trial

counsel was ineffective for failing to preserve these alleged errors. However, for

ineffective assistance of counsel to constitute cause to excuse a procedural default, that

15

claim itself must be exhausted in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 451-52, 120 S. Ct. 1587, 1591 (2000). A review of Petitioner's state court appellate briefs indicates that he never raised an ineffective assistance of counsel claim in the Michigan courts with respect to these two particular claims. Instead, Petitioner argued that counsel's waiver of the right to be present was invalid, and that the misconduct met the plain error standard. Because Petitioner never raised an ineffective assistance of counsel claim with respect to his defaulted claims in the Michigan courts, he has not demonstrated cause to excuse his default.

Petitioner does not contend that the failure to consider these claims will result in a "fundamental miscarriage of justice." Additionally, he has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider these claims as a ground for a writ of habeas corpus in spite of the procedural default. The Court therefore concludes that Petitioner's state procedural default bars habeas review of his second and third claims.

### C. Ineffective Assistance of Counsel

Petitioner's fourth and seventh claims raise allegations of ineffective assistance of trial counsel. Specifically, Petitioner claims that his trial counsel should have raised as a defense that Petitioner had a medical condition preventing him from molesting the victim as she claimed. He also asserts that counsel should have presented evidence that Petitioner was away from home for a large portion of May 10, the day the victim testified the assault occurred. Finally, Petitioner asserts that his counsel should have argued that

16

the evidence of the prior sexual assault would have been admissible under the rape shield

law because it was relevant to show source of injury.

To establish that he received ineffective assistance of counsel, a petitioner must

show that counsel's performance was deficient and that this deficiency prejudiced his

defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). To

establish the first prong, a petitioner may show that counsel's performance fell "outside

the wide range of professionally competent assistance." *Id*. at 689, 104 S. Ct. at 2065.

This "requires a showing that counsel made errors so serious that counsel was not

functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687, 104 S. Ct.

at 2064.

To satisfy the second prong, a petitioner must show that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id*. at 694, 104 S. Ct. at 2068. "A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Id*. A court's review of

counsel's performance must be "highly deferential." *Id*. at 689, 104 S. Ct. at 2065.

Habeas relief may be granted only if the state-court unreasonably applied the standard for

evaluating ineffective-assistance-of-counsel claims established by *Strickland*. *Knowles v.

Mirzayance*, 556 U.S. 111, 122-23, 129 S. Ct. 1411, 1419 (2009). "The question is not

whether a federal court believes the state court's determination under the *Strickland*

standard was incorrect but whether that determination was unreasonable– a substantially

higher threshold." *Id*. at 123, 129 S. Ct. at 1420 (internal quotation marks and citation

17

omitted).

First, Petitioner asserts that trial counsel should have presented evidence regarding his medical condition.  Attached to the petition is a medical record showing that Petitioner had radiation therapy for prostate cancer from August through October 1993. A report dated February 9, 2004, indicates that Petitioner reported "he has some erectile dysfunction at this time."  Petitioner, however, never presented any evidence to the state court that he continued to suffer from erectile dysfunction when the molestation of the victim occurred.  Moreover, the charges concerned digital penetration, oral sex, and Petitioner's fondling of the victim's breasts and buttocks.  Finally, Petitioner's attorney did elicit evidence during trial that Petitioner lacked sexual drive and was incapable of becoming aroused.  Given these facts and the standard of review set forth in *Knowles*, the decision of the state court was not unreasonable.

Next, Petitioner has attached to his petition copies of various store receipts dated between May 10 and 12, 2007.  (*See* ECF No. 2 Ex. 2.)  He argues that his counsel should have presented the receipts as evidence to show that he was away from home at times on those dates, making the victim's allegation that she was molested on May 10 more unlikely.  The prosecutor's theory, however, was that the offenses occurred between October 2006 and June 2007. The prosecutor did not base her case on any evidence indicating that the offense occurred on May 10.  And, in any event, the three receipts for May 10 are time stamped 2:24 p.m., 5:14 p.m., and 6:03 p.m. (*see id.*); therefore they do not foreclose the possibility that the crime occurred at other points in the day or later that

18

evening.

Finally, Petitioner asserts that his counsel was ineffective for failing to seek to admit evidence of the victim's alleged prior molestation on the ground that it explained her physical condition (i.e. the absence of an intact hymen).  The Michigan Court of Appeals denied the claim because Petitioner did not proffer sufficient evidence to support admission of the evidence under this theory:

> . . . defendant failed to present any evidence, either in the trial court or to this Court, identifying the nature of the alleged past sexual abuse, and there is nothing in the record to indicate that the abuse was of a type that could possibly explain the victim's later condition. The record merely indicates that the victim's grandmother seemingly alluded to an instance of abuse not necessarily involving any penetration, in the child's past. Without more, defendant offers this Court no basis to conclude that the allegation of prior abuse was relevant to the victim's later physical condition, to conclude that defendant's trial counsel performed deficiently by failing to assert more fervently that the evidence was admissible, or to conclude that defendant was prejudiced by counsel's asserted failure in this regard.

*White*, 2009 WL 1567360, at *4.  This was not an unreasonable application of the prejudice-prong of the *Strickland* standard.

Testimony at trial indicated that the victim's hymen was not intact.  The only evidence of a prior molestation was the grandmother's allusion in a taped statement to something happening to the victim when she was a toddler.  This evidence did not undermine evidence that Petitioner committed the charged acts of digital and oral penetration, nor did it even prove that the victim had been sexually molested.  Petitioner proffered no evidence to the Michigan appellate court that the alleged prior incident resulted, or even could have resulted, in the victim's physical condition.  In evaluating the

19

reasonableness of the state court's adjudication, this Court is limited to the record presented in those proceedings. *Cullen v. Pinholster*, – U.S. – , 131 S. Ct. 1388, 1398 (2011). Consequently, Petitioner "is stuck with 'the record that was before the state court.'" *Bourne v. Curtin*, 666 F.3d 411, 415 (6th Cir. 2012) (quoting *Pinholster*, 131 S. Ct. at 1398). Based on the existing record, there is no basis on which to conclude that the failure of trial counsel to offer evidence of the prior molestation to show source of injury resulted in prejudice. Accordingly, the decision of the Michigan Court of Appeals was not unreasonable and Petitioner has failed to demonstrate entitlement to relief based on this claim.

### D.  Ex Post Facto

In his fifth and sixth claims, Petitioner asserts that his rights under the *Ex Post Facto* Clause were violated. Specifically, he claims that the 25-years mandatory minimum provision in Michigan Compiled Laws § 750.520b went into effect on December 21, 2007, after the charged offenses took place, and therefore could not be retroactively applied to him.

The *Ex Post Facto* Clause provides that "no State shall. . .pass any. . .ex post facto Law." U.S. Const. art. I, § 10, cl. 1. This provision embodies a "presumption against the retroactive application of new laws" and is "an essential thread in the mantle of protection that the law affords the individual citizen." *Lynce v. Mathis*, 519 U.S. 433, 439, 117 S. Ct. 891, 895 (1997). The *Ex Post Facto* Clause has been interpreted as prohibiting the enactment of any law that "'changes the punishment, and inflicts a greater punishment,

20

than the law annexed to the crime, when committed.'" *Ruhlman v. Brunsman*, 664 F.3d

615, 619 (6th Cir. 2011) (quoting *Rogers v. Tennessee*, 532 U.S. 451, 456, 121 S. Ct.

1693, 1697 (2001)).

Petitioner is mistaken as to the effective date of the statute's amendment.  As the

Michigan Court of Appeals found in reviewing the claim:

> [Mich. Comp. Laws] 750.520b was amended by 2006 PA 165 and 169,
> effective August 28, 2006, to add subsection (2)(b), which prescribes a
> penalty of life imprisonment or a minimum sentence of 25 years where a
> first-degree CSC offense is committed by an individual 17 years of age or
> older against an individual less than 13 years of age."

*White*, 2009 WL 1567360, at *5.  Indeed, review of the legislative record shows that 2006

Mich. Pub. Act 165 was signed by the Governor on May 29, 2006, and took effect 90

days later.  The victim testified that the crime occurred on May 10, 2007, and the criminal

information lists the date of the offense as June 2007.  The amendment to the statute

creating the mandatory minimum was enacted before these dates.  Therefore, the statute

was not applied retroactively to Petitioner's case.

## IV.  Conclusion

For the reasons stated above, Petitioner is not entitled to habeas relief on any of the

claims contained in his petition.

When a district court enters a final order adverse to an applicant for a writ of

habeas corpus, the court must issue or deny a certificate of appealability.  Rule 11(a),

Rules Governing § 2254 Cases.  A certificate of appealability may be issued "only if the

applicant has made a substantial showing of the denial of a constitutional right."  28

U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327, 123 S.Ct. at 1034.  However, when a district court denies habeas relief on procedural grounds without reaching the petitioner's constitutional claims, a certificate may issue if the petitioner shows that jurists of reason would find it debatable whether (1) the petition states a valid claim of a denial of a constitutional right, and (2) the district court was correct in its procedural ruling.  *Slack v. McDaniel*, 529 U.S. 473, 484-85, 120 S.Ct. 1595, 1604 (2000).  Petitioner has not made a substantial showing of the denial of a constitutional right.

Accordingly,

**IT IS ORDERED** that Petitioner's application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**;

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

Dated: October 25, 2012

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Sanford A. Schulman, Esq.
AAG Andrea M. Christensen